412 F.2d 165
 DISTRICT 50, UNITED MINE WORKERS OF AMERICA, a/k/a International Union of District 50, United Mine Workers of America, et al., Appellants,
v.
INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Appellee.
 No. 22028.
 United States Court of Appeals District of Columbia Circuit.
 Argued December 2, 1968.
 Decided April 10, 1969.
 
 Mr. Jack H. Weiner, Washington, D. C., with whom Messrs. Joseph C. Wells and Alfred D. Treherne, Washington, D. C., were on the brief, for appellants.
 Mr. Willard P. Owens, Washington, D. C., with whom Messrs. Edward L. Carey, Harrison Combs and Walter E. Gillcrist, Washington, D. C., were on the brief, for appellee.
 Before BAZELON, Chief Judge, WRIGHT and LEVENTHAL, Circuit Judges.
 BAZELON, Chief Judge:
 
 
 1
 District 50, United Mine Workers, appeals from the grant of a preliminary injunction restraining it from using that name. The dispute arises from a schism which arose last spring between the appellant and the International Union of the United Mine Workers, the plaintiff below. As a result of policy differences on sundry matters between the leadership of District 50 and the Mine Workers, the latter seeks to protect itself and the public from the confusion allegedly created by District 50's use of the appellation "United Mine Workers" in its title.
 
 I.
 
 2
 The decision to grant a preliminary injunction is normally within the discretion of the trial court. But an appellate court may review the grant or denial of preliminary relief which "proceeded from an erroneous premise * *," Perry v. Perry, 88 U.S.App.D.C. 337, 338, 190 F.2d 601, 602 (1951). And since "a preliminary injunction must rest on a convincing presentation," the appellate court may also reverse the grant of an injunction where the "appellee's showing is something less than the persuasive demonstration upon which an injunctive award must be predicated." Udall v. D. C. Transit System, Inc., 131 U.S.App. D.C. 381 at 383, 384, 404 F.2d 1358 at 1360-1361 (1968). Our scrutiny of the record reveals that no such persuasive demonstration of a need for injunctive relief was made in this case. Accordingly, we reverse.
 
 
 3
 The Mine Workers created District 50 in 1936 as a catchall unit for workers in fields related to but outside of coal mining, the traditional province of the parent union. Despite its success in organizing such workers — to the point that District 50 is now larger than its former parent — the offspring remained a provisional district whose members had no vote in the Mine Workers' affairs. After the passage of the Landrum-Griffin Act, 29 U.S.C. § 401 et seq. (1964), the parent union in 1960 directed District 50 to draw up its own constitution and prepare to elect its own officers. The leadership of District 50, which had always been appointed and paid by the Mine Workers, complied, and in 1961, A. D. Lewis, the brother of John L. Lewis of the Mine Workers, was elected the first president of District 50.
 
 
 4
 The following year, a month after the death of A. D. Lewis, District 50 signed formal articles of affiliation with the Mine Workers which, among other things, allowed it to include "United Mine Workers" in its title. Its elected officers at that time had, with one exception, apparently been originally appointed by the former parent union.
 
 
 5
 With time the two unions drifted apart on such matters as political programs and policies toward the use of nuclear energy to generate power, until at length the Mine Workers invoked the provision of the 1962 articles of affiliation which allowed it to terminate on 30 days' notice District 50's privilege to include "United Mine Workers" in its name. District 50 declined to change its title, arguing that the articles of affiliation were executed under fraud, duress, restraint and coercion. This lawsuit followed, accompanied by another suit — not now before this court — in which the Mine Workers seek to collect a sizeable debt of some eight million dollars that District 50 acknowledged at the same time the articles of affiliation were signed in 1962.
 
 II.
 
 6
 A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried. In this case the Mine Workers allege only that public confusion is inevitable if District 50 is allowed to continue to append "United Mine Workers" to its name. The trial judge declined to hear evidence on this point, on the ground that confusion "would naturally arise if two rival concerns use the same name."
 
 
 7
 Obviously, some confusion is inevitable from the similarity in names. But while the plaintiff may well be embarrassed or inconvenienced by this confusion, it cannot so easily be concluded that the Mine Workers will be irreparably harmed by it. The plaintiff alleges that it is now actively competing with District 50 to organize the same workers in some cases. But the record does not show with any clarity that the organizational overlap is important; certainly it has not been in the past. The affidavits submitted by the parties, moreover, show that both the Mine Workers and District 50 take special pains to caution workers that each union is independent from, and indeed at odds with the other.[1]
 
 
 8
 The usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation. See 7 J. W. MOORE, FEDERAL PRACTICE ¶ 65.04[1] (2d ed. 1968). "The status quo is the last uncontested status which preceded the pending controversy." Westinghouse Elec. Corp. v. Free Sewing Mach. Co., 256 F.2d 806, 808 (7th Cir. 1958). The last uncontested status preceding this dispute was the use by District 50 of the name which the Mine Workers now seek to deny it. This name, moreover, was that which the defendant District 50 has borne since the plaintiff created it more than 30 years ago. During that time District 50 has flourished, and after organizing thousands of workers under the name "District 50, United Mine Workers of America," the defendant may well have acquired some interest in that title. This is scarcely, as the plaintiffs would argue, the sort of case in which a new organization is attempting to palm itself off as another, to the detriment of the other. See, e. g., American Gold Star Mothers v. National Gold Star Mothers, 89 U.S.App.D.C. 269, 191 F.2d 488, 27 A.L.R.2d 948 (1951).
 
 
 9
 The likelihood of success on the merits that a movant for injunctive relief must demonstrate varies with the quality and quantum of harm that it will suffer from the denial of an injunction. "[W]here it appears that a lack of showing of irreparable damage * * * exists," the Second Circuit has pointed out, "the party seeking a preliminary injunction has a burden of convincing with a reasonable certainty that it must succeed at [the] final hearing." Dino de Laurentiis Cinematografica v. D-150, Inc., 366 F.2d 373, 375 (2d Cir. 1966); see also Unicon Mtg. Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966).
 
 
 10
 The trial judge entered a finding of fact that in 1962 the "plaintiff and defendant unions entered into an affiliation agreement which included the license by plaintiff of the name `District 50, United Mine Workers of America' to said defendant, for a valid consideration." Far from being a proper finding of fact, this constituted a finding of law on an issue critical to the litigation.
 
 
 11
 The principal contention of District 50 is that the articles of affiliation signed in 1962 are invalid because of the influence the Mine Workers exercised on the officers of the defendant. At this stage of the proceeding we neither could nor should judge the validity of this contention. But the issue is hardly frivolous, and nothing in the record supports a conclusion that the plaintiff has demonstrated a sufficient likelihood of success on the merits to justify a preliminary injunction in a case such as this where the showing of irreparable harm is weak.
 
 
 12
 Finally, a third consideration in any decision to grant a preliminary injunction is the harm an injunction will cause the other party. See Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); see also, 7 J. W. MOORE, FEDERAL PRACTICE ¶ 65.04[1] (2d ed. 1968). District 50 argued to the trial court that it had approximately $50,000 worth of supplies imprinted with its name. The trial judge concluded that this constituted no problem since "you could use a rubber stamp showing the change in name." More importantly, the trial judge gave no apparent attention to the affidavit of District 50's president, in which he stated:
 
 
 13
 As an Organizer and Representative since 1942, I, personally, have a knowledge of the values attached to continuing the use of the name "District 50, United Mine Workers of America." It means the difference between success and failure in our organizing ventures.
 
 
 14
 This was obviously a factor of major importance. District 50 has used its present name since its birth in 1936. The trial judge had a broad discretion to balance the harm to the Mine Workers from the confusion allegedly created by the similarity in names against the harm to the defendant District 50 from a change in its name. But because we cannot conclude from the record that the requisite balancing was made, for this reason also the grant of a preliminary injunction must be reversed.
 
 
 15
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 Subsequent to the oral argument in this case, the appellee lodged two supplemental statements with the court relating to the irreparable harm it claims will follow from the denial of a preliminary injunction. While these statements and the supporting material also lodged do indicate a certain amount of confusion in the public mind concerning the relationship between District 50 and the Mine Workers, they do not affect our decision in this case