The **WASHINGTON FREE COMMUNITY, INC., et al., Appellants,**

v.

**Jerry V. WILSON, Chief of Police, District of Columbia Metropolitan Police, et al.**

**No. 23438.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 22, 1969.

Decided Dec. 19, 1969.

Mr. John G. Murphy, Jr., Washington, D. C., with whom Messrs. Ralph J. Temple and Lawrence Speiser were on the brief, for appellants.

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee, Wilson.

Mr. Nathan Dodell, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Joseph M. Hannon, Asst. U. S. Attys., were on the brief, for appellee, Wright.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

PER CURIAM:

This is an appeal of the denial by the District Court of a preliminary injunc-

tion.[1] The complaint sought declaratory and injunctive relief against the heads of the Washington Metropolitan Police and the United States Park Police upon allegations that their subordinates were harassing and unlawfully arresting the vendors of a semimonthly publication called the *Washington Free Press.* Hearing in the District Court consisted solely of arguments by counsel founded upon the pleadings and affidavits. Coincidental with the denial to appellants of a preliminary injunction, the District Court also denied the motion of the head of the Park Police for summary judgment; and the case thus remains pending in the District Court for trial on the merits.

The issue before us with respect to the preliminary injunction is the narrow one of whether the District Court abused its discretion in failing to give preliminary injunctive relief. We think not. The charges against the Metropolitan Police are that street vendors of the *Free Press* are on occasion harassed and intimidated (by unlawful arrest and otherwise) while selling their papers on the streets. The affidavits purport to show a few individual instances of such harassment. But it was not made to appear that the selling of the paper on the streets has been halted or, indeed, seriously impaired, at least not to the degree making the withholding of temporary relief reversible error.

In the case of the Park Police, the affidavits show arrests for selling in parks under the jurisdiction of the National Park Service; and the Park Police represent that it is both their policy and their duty to make such arrests under a regulation relating to commercial vending in the parks promulgated under the authority of an Act of Congress.[2] Here again it appears that the papers can be,

1. This matter initially came before a motions panel of this court upon (i) a motion by appellants for summary reversal or, alternatively, an injunction pending appeal, and (ii) a motion by appellee Wright for summary affirmance. With the agreement of the parties, the motions panel referred to a merits panel the appeal from the denial of a preliminary injunction, to be heard on the papers filed in connection with the motions.

2. 36 C.F.R. § 50.24; 16 U.S.C. § 1, 3, 20–20g.

and are being, sold at the entrances and exits to the parks and on the streets adjoining them.

We do not, therefore, see the imminent and irreparable injury which converts the District Court's exercise of discretion into an abuse thereof. We agree with its apparent conclusion that the facts and issues raised by this complaint could best be established, clarified, and resolved, not on motion papers and lawyers' arguments but by the salutary processes of a trial on the merits.[3] We see no reason why such a trial may not go forward promptly; and we think that the prospect of such a trial, as well as the powerfully illuminating effects of adversary encounter in an evidentiary hearing, will be greatly in aid of a just disposition of this controversy in both its major aspects.

Having moved—unsuccessfully—for summary judgment in the District Court, the Park Police may be thought to have given substance to appellants' contention that this aspect of their complaint at least is ripe for final resolution, and that the legal validity of the regulation, and perhaps of the underlying statutes, should now be pronounced upon by us. But the District Court's action in denying summary judgment at the instance of the Park Police connoted its unreadiness to proclaim in the abstract the legality of the regulation and statutes as applied here, presumably because it thought that there were material issues of fact usefully to be explored in the ventilation of this issue. We think that a trial court, asked to decide large and important public issues such as are involved in litigation of this nature, is entitled to decide for itself how it may most fruitfully inform itself for the task of decision. We share the District Court's apparent view that, before judgment is passed either by it or by us, there is a lot more that could helpfully be known about the purpose and operation of the authority claimed by the Park Police and challenged by appellants.

Affirmed.

BAZELON, Chief Judge (concurring in part and dissenting in part):

I agree that the denial of preliminary relief against the Metropolitan Police should be affirmed. The suit against the Park Police, however, presents substantially different issues, and in my view preliminary relief should be granted.

I

The suit against the Metropolitan Police rests wholly on allegations of police misconduct. Plaintiffs claim that the Metropolitan Police have engaged in a pattern of arresting and detaining newspaper vendors without legal authority, in violation of their first amendment rights. In a proper case, courts clearly have the power to enjoin unconstitutional police practices.[1] But before the court has heard evidence as to the nature and extent of the police practices complained of, it may be unable to conclude that the likelihood of success on the merits and the threat of irreparable injury are sufficient to require preliminary relief.[2]

In this case the record shows by uncontroverted affidavits numerous illegal arrests and other incidents of harassment, and it shows a refusal by the Po-

---

3. We note that the injunction entered against the police in Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966), followed upon a full-scale trial on the merits; and that the one sought in Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969), awaited such a trial after reversal of a dismissal of the complaint on motion.

1. Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Gomez v. Layton, 129 U.S.App.D.C. 289, 394 F.2d 764 (1968); Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966); see generally, Note, the Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143 (1968).

2. Compare Gomez v. Layton, 129 U.S.App. D.C. at 291, 394 F.2d at 766, with Lankford v. Gelston, 364 F.2d at 204. The court in Lankford relied on evidence of a vast number of past incidents of unconstitutional police conduct for its conclusion that there was a substantial danger of repetition, calling for injunctive relief.

lice Department to take affirmative action to control or prevent further incidents. The majority does not spell out what further facts are required to establish a claim for preliminary relief. Nevertheless, I concur in the result on the ground that a trial might show there is no substantial threat of continuing injury. The incidents alleged may have been exceptional when they occurred, and there may be some reason to doubt that they will recur. Therefore I find in the district court's action neither an abuse of discretion nor an error of law sufficient to require reversal.[3]

## II

With respect to the Park Police, however, there is no question of fact concerning the likelihood that the challenged police conduct will continue. The Park Police are enforcing a regulation which they will continue to enforce so long as it remains in effect. Plaintiffs challenge that regulation on its face as an overbroad restraint on their first amendment right to sell newspapers in the parks. I have the greatest respect for the majority's reluctance to decide cases without benefit of trial. To apply that principle here, however, is to require the parties to go through an expensive and meaningless charade. No one has specified any unexplored facts which would prevent us from reaching a judgment on the issues before us in this part of the case.

36 C.F.R. § 50.24 provides: "No sales shall be made nor admission fee charged, and no article shall be exposed for sale in a park area without an official permit."[4] This regulation, on its face and in practice, includes within its scope sales of newspapers. Thus the permit system challenged here, like permit systems regulating parades,[5] pamphlet distribution,[6] sound trucks,[7] and door-to-door solicitation,[8] must be closely scrutinized in light of the doctrine of constitutional overbreadth in the area of first amendment freedoms.

The sale of newspapers is protected by the first amendment, no less than their free distribution.[9] But protected conduct may be regulated by provisions narrowly drawn to protect a substantial competing governmental interest.[10] The permit system established by § 50.24(c) regulates sales in the parks in order to

3. For the standards which should guide the decision to grant a preliminary injunction, and the scope of appellate review, see, e. g., District 50, United Mine Workers of America v. International Union, 134 U.S. App.D.C. 34, 412 F.2d 165 (1969).

4. The regulation is issued pursuant to a statute which authorizes the Secretary of the Interior to "make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks * * * under the jurisdiction of the National Park Service * * *. He may also grant privileges, leases, and permits for the use of land for the accommodation of visitors in the various parks * * *." 16 U.S.C. § 3 (1964).

5. E. g., Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Hague v. CIO, 307 U.S. 496, 516, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

6. E. g., Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

7. E. g., Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948).

8. E. g., Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 123 (1940); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L. Ed. 155 (1939).

9. Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

10. See, e. g., Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

When governmental action impinges on the exercise of first amendment rights, the burden is not on the citizen to show the serious character of the impairment of his first amendment rights. He is entitled to "the least restriction possible on the citizen's ability to communicate his political dissent." Women Strike for Peace v. Hickel, 137 U.S.App.D.C. 29, 420 F.2d

protect the interest of the public in tranquillity and repose in the parks. The Supreme Court has upheld permit systems that regulate the exercise of first amendment freedoms in order to protect interests in privacy, order, and tranquillity.[11] The difference between those permit systems and this one is that this one totally lacks a standard that tailors the prohibition narrowly to the evil to be feared.[12]

The government cites the administrative practice to supply the relevant standard, namely the permanence of the vending location. The affidavits establish that permits are denied as a matter of course to itinerant vendors.[13] The Park Service standard may cure the defect of unconfined discretion in the granting of permits, but it does not cure the defect of overbreadth. Many of the regulatory

schemes considered by the Supreme Court in the first amendment area have been defective in bestowing too much discretion on an administrative official, who was thereby empowered to act as a censor.[14] But when that defect is cured by an absolute prohibition, there remains the question whether the prohibition is too broad an invasion of first amendment freedoms to be justified by the competing interest asserted.[15]

The Supreme Court has never upheld a blanket prohibition on the distribution of literature in an area traditionally open to the public for the exercise of first amendment rights. The streets and parks are traditionally dedicated to such use,[16] and there the distribution of handbills may not be prohibited,[17] though the state may prohibit loud and raucous noises,[18] or littering,[19] or unreasonable

597 at p. 37 (August 1, 1969) (Wright, J., concurring); *see, e. g.*, Carroll v. President & Comm'rs of Princess Anne County, 393 U.S. 175, 183–184, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). The burden is rather on the government, to show the serious character of the interference with a competing governmental interest that justifies the restriction on expression. *See, e. g.*, NAACP v. Button, 371 U.S. 415, 437–438, 444, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Kunz v. New York, 340 U.S. 290, 293–294, 71 S.Ct. 312, 95 L.Ed. 280 (1951); A Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111 (June 24, 1969).

11. *See* cases cited note 10 *supra.*

12. The statute contains a mandate to "conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1 (1964). That language hardly confines official discretion to "the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order." Carroll v. President & Comm'rs of Princess Anne County, 393 U.S. 175, 183, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).

13. This is not a case in which the Park Service policy is ambiguous, and further

evidence elucidating that policy is necessary before we can consider its constitutional validity. *Cf.* Women Strike for Peace v. Hickel, 137 U.S.App.D.C. 29, 420 F.2d 1111 (August 1, 1969).

14. *E. g.*, Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Fowler v. Rhode Island, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953); Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951), Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

15. Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Kovacs v. Cooper, 336 U.S. 77, 81–82, 69 S. Ct. 448, 93 L.Ed. 513 (1949).

16. Shuttlesworth v. Birmingham, 394 U.S. 147, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), quoting from Hague v. CIO, 307 U.S. 496, 515–516, 59 S.Ct. 954, 83 L. Ed. 1423 (1939).

17. Jamison v. Texas, 318 U.S. 413, 63 S. Ct. 669, 87 L.Ed. 869 (1943); Schneider v. State, 308 U.S. 147, 161–163, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Hague v. CIO, 307 U.S. 496, 518, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

18. Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

19. Schneider v. State, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

interference with public passage.[20] The validity of an absolute prohibition is unclear even in the context of door-to-door distribution of literature, where the dedication to public use is lacking and the competing interest in privacy is greater.[21] An absolute prohibition on itinerant newspaper sales would seem to suffer from the same constitutional defect as an absolute prohibition on handbill distribution.[22]

The national parks vary widely in character. We may take judicial notice of the fact that Dupont Circle, for example, is totally devoid of the repose that the regulation seeks to protect. The fact that the prohibition extends to such parks is a clear indication of unconstitutional overbreath. Furthermore, there is no indication that the constitutionality of the regulation might be saved by a discriminating enforcement policy that avoids parks which are centers of activity. The plaintiffs recite arrests in Dupont Circle and in the similarly tumultuous Lafayette Park. The Park Police allege a uniform and nondiscriminatory enforcement policy. Even if the regulation is constitutional on its face, there are serious doubts about its constitutionality as applied to itinerant vendors of newspapers in Dupont Circle. In these circumstances, there is a substantial likelihood that plaintiffs will prevail on the merits.

I turn, therefore, to the question whether the trial judge had discretion to withhold preliminary relief after balancing the relevant interests. The trial court found that an injunction would seriously disturb tranquillity in the parks, whereas the denial of an injunction would cause minimal inconvenience to the plaintiffs. The balance struck by the trial court, however, gives insufficient weight to the constitutional considerations. Any delay in the exercise of first amendment rights constitutes an irreparable injury to those seeking such exercise.[23] A regulation that interferes with speech under narrow limitations of time and space may meet the test of constitutional validity.[24] But an overbroad regulation that violates constitutional requirements inflicts an irreparable injury, even in a brief time period or a limited space.[25] "The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed

20. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Kunz v. New York, 340 U.S. 290, 293–294, 71 S.Ct. 312, 95 L.Ed. 280 (1951).

21. *Compare* Martin v. Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) *with* Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951).

22. *See* cases cited note 17 *supra*; *cf.* Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). "The essence of those opinions is that streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 315, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968).

23. Shuttlesworth v. Birmingham, 394 U.S. 147, 160–161, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring);

Dombrowski v. Pfister, 380 U.S. 479, 489, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Freedman v. Maryland, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); A Quaker Action Group v. Hickel, 137 U.S. App.D.C. 176, 421 F.2d 1111 (June 24, 1969). Because of its topical nature, a newspaper is especially vulnerable to serious injury from even a brief period of suppression. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 224–225, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (dissenting opinion of Mr. Justice Harlan).

24. *See, e. g.,* Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).

25. "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939); *see* Murdock v. Pennsylvania, 319 U.S. 105, 117, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

evidence·that he is being denied a constitutional right." [26]

The Park Service is of course free to draft a regulation narrowly tailored to protect the interest of the public in preserving the tranquil atmosphere that prevails in some parks. But the interest of the public in enforcing the present sweeping regulation is outweighed by the interest of the plaintiffs in exercising their first amendment rights. I would therefore reverse and remand to the district court for a preliminary injunction restraining the Park Police from enforcing § 50.24.

26. Henry v. Greenville Airport Comm'n, 284 F.2d 631, 633 (4th Cir. 1960). *Compare* Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966) *with* Blackwell v. Issaquena County Board of Educ., 363 F.2d 749 (5th Cir. 1966); *see* Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731 (1969).