UNITED TRANSPORTATION UNION, an Unincorporated Labor Union, as Representative of a Class of Operating Railroad Personnel, Plaintiff,

v.

GEORGIA RAILROAD, a Georgia Corporation, Defendant.

Civ. A. No. 14652.

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 18, 1971.

T. J. Lewis, of Lewis, Lewis, Spearman & Bynum, Atlanta, Ga., for plaintiff.

William H. Major of Heyman & Sizemore, Atlanta, Ga., for defendant.

## ORDER DENYING PRELIMINARY INJUNCTION

MOYE, District Judge.

This is a suit brought under the Railway Labor Act (Title 45 U.S.C. § 151, et seq.) seeking a preliminary injunction to enjoin an alleged unilateral change by defendant railroad in working conditions, contrary to 45 U.S.C. § 156. The alleged change is said to consist in moving the home terminal of members of plaintiff from Augusta to Camak, Georgia.

No temporary restraining order was issued following the hearing on January 22, 1971, upon defendant's undertaking, in the event of a subsequent adverse order, to "roll back" to the *status quo ante.*

By Bulletin dated January 15, 1971, defendant purported to abolish the crew assignments for trains 30 and 31, 50 and 51, and establish effective January 24, 1971, new train schedules and crew assignments under which Camak would be the "home" terminal for the crews. A new local freight schedule operating between Augusta and Camak would also be established.

Plaintiff claims that said changes constitute a change in the *status quo* contrary to 45 U.S.C. § 156.

There is presently pending at the national level negotiations between the plaintiff union, and other unions representing railroad employees on the one hand, and defendant railroad, and other railroads on the other hand, over rates of pay, rules and working conditions. One of the proposals by the railroads, including defendant, in said negotiations is to "establish a rule to provide that * * * the carrier shall have the right to establish, move, consolidate and abolish crew terminals * * *" Those negotiations are subject to H.J.R. 1413 which provides that "the final paragraph of § 10 of the Railway Labor Act (45 U.S.C. § 160) shall apply and be ex-

tended for an additional period with respect to the above dispute so that no change, except by agreement, shall be made by the carriers represented by the National Railway Labor Conference and the Eastern, Western and Southeastern Carriers Conference Committees, or by their employees, in the conditions out of which such dispute arose prior to 12:01 antemeridian of March 1, 1971."

It is the plaintiff's position that the change by defendant amounts to a change in the conditions out of which the national dispute arose and is prohibited (45 U.S.C. § 156 as modified by H.J.R. 1413).

The defendant takes the position that the change is not a change in the conditions out of which the dispute now in negotiations arose, but is, in effect, a mere application of crew assignment rules in effect for many years.

The railroad claims that the only effect on it of rights sought under the national proposal would be to change its present conceded "home" terminal from Augusta to some other point, if it so desired, the "home" terminal signifying, according to the evidence before the Court, the point from which the railroad must pay extra, or unassigned, employees to and from their work assignments.

In this connection, it was conceded by the plaintiff at the hearing that, with respect to all crews in unassigned service, Augusta is the home terminal and Macon and Atlanta are the away from home terminals, *but for assigned crews the terminal is the tie-up or layover point*. It was further conceded that the only changes under consideration here involve assigned crews. Under the new schedules for trains 30 and 31, 50 and 51, here involved, Camak became the tie-up or layover point.

The case is before the Court on motion for preliminary injunction, and while it is not necessary for plaintiff to prove its case at this point, there must be showing that there is a probability of ultimate success. King v. Saddleback Junior College, 425 F.2d 426 (9th Cir. 1970). See also, District 50 U.M.W. v. International U, U.M.W., 134 U.S.App. D.C. 34, 412 F.2d 165 (1969). The decision of whether to grant or deny preliminary injunction in this case is also tempered by the negotiations being carried on pursuant to H.J.R. 1413, *supra*, since any agreement reached thereunder might be dispositive of this case.

Were it not for the broadness of defendant's November 6, 1969, § 6 counter-proposal, the Court would have no hesitation in holding that the question here is simply one of the application of a conceded formula. The notice involved was broad enough to embrace the problem before the Court today, but went beyond any "disputes" which the evidence showed may have existed between the parties.

As pointed out by Chief Judge Smith in United Transportation Union v. Atlanta and West Point Railroad Company, Civil Action No. 14520 in this Court (Order of January 6, 1971), the case of Detroit & Toledo Shore Line Railroad Company v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed. 2d 325 (1969), relied upon heavily by plaintiffs here as in that case, is distinguishable in that in the *Shore Line* case the subject matter of the change involved an unresolved and disputed issue between the union and the railroad. Here the evidence does not reveal any prior dispute between the union and the railroad over the question of the designation of the tie-up or layover point as the terminal for assigned crews.

Believing that the schedule change involved here does not involve a change in the working conditions which presently are the subject matter of national handling, and further that no irreparable injury will occur to plaintiff or those it represents if a preliminary injunction is denied, the plaintiff's request for preliminary injunction is hereby denied.