**AMERICAN CAN COMPANY, Plaintiff,**

v.

**LOCAL UNION 7420, UNITED STEEL-WORKERS OF AMERICA, et al., Defendants.**

**Civ. A. No. 72–1919.**

United States District Court, E. D. Pennsylvania.

Oct. 25, 1972.

Mark S. Dichter, Philadephia, Pa., for plaintiff.

Thomas W. Jennings, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

HUYETT, 3rd District Judge.

Defendants have filed motions seeking an expedited hearing on a request to

modify the preliminary injunction issued in open court on October 13, 1972. In order to understand these motions, a review of the posture of the case will be helpful.

We issued a preliminary injunction at the conclusion of a final hearing on a permanent injunction held on October 11, 12 and 13, 1972. The preliminary injunction was simply an extension of a Temporary Restraining Order (TRO) issued by us on September 27, 1972, and was based on our tentative judgment that plaintiff had sustained the allegations made in the complaint. A hearing on the TRO was held on October 6, 1972, and the TRO was extended to October 12, 1972. The TRO was then further extended to October 13, 1972. The TRO essentially enjoined the defendants from engaging in any stoppage of work, interruption or disruption of operation at plaintiff's Morrisville plant, and other activities alleged to be in violation of a "no-strike" clause in the collective bargaining agreement between the parties. Subsequent to the issuance of the TRO, we held a final hearing terminating on October 13, 1972 to determine whether the subject matter of the dispute between the parties precipitating the strike or work stoppage on September 27 was a grievance which both parties were contractually bound to arbitrate. Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199 (1970). Upon the conclusion of the final hearing on October 13, 1972 and the issuance of a preliminary injunction, the parties agreed to file memoranda on the law within two (2) days following the transcription of the notes of testimony which it was expected would be accomplished in about two weeks. At that time we would determine whether any further order of the court would be appropriate.

Meanwhile, defendants learned that plaintiff had decided to impose discipline effective October 23, 1972 by suspension for various periods from five (5) to forty (40) days of the 71 employees who had participated in the September 27, 1972 work stoppage. Furthermore, counsel for plaintiff has advised that the plaintiff and the International Union, the parent Union of defendant Union, have agreed to an expedited arbitration hearing, to be held on November 14, 15 and 16, 1972 of the issues involved in the suspension of the 71 employees who participated in the September 27, 1972 work stoppage. Thus, it would appear that the questions whether the September 27, 1972 work stoppage was in violation of the collective bargaining agreement, and whether the plaintiff had proper cause for disciplining the 71 employees for participation in that work stoppage and other conduct related thereto, will be heard and determined by the Arbitrator during the three days of hearings commencing November 14, 1972. Anticipating that plaintiff's action disciplining the 71 workers will cause the employees at the plant to strike, and thus be in violation of our October 13, 1972 injunction, the defendants have filed motions that we modify our injunction to prevent the plaintiff from taking any action

> affecting the employment status of members of defendant union on the grounds of their actions occurring during and arising out of the work stoppage at the Morrisville plant on or about September 27, 1972 and thereafter.

We decline to modify the injunction; thus, we deny the motions of defendants.

Defendants contend that plaintiff's imposition of suspensions on those employees who engaged in the September 27 walkout disturbs the status quo that resulted from the issuance of our preliminary injunction of October 13. The status quo as viewed by the defendants was the position the parties occupied immediately preceding the September 27 work stoppage. Plaintiff denies ever having entered into any agreement to maintain the status quo with respect to the employment relationship existing between the parties pending a decision by

this court with respect to the legal issues involved in the work stoppage.

■■ Little need be said to rebut plaintiff's contention that there did not exist an agreement to preserve the status quo pending a decision by us on the request for a permanent injunction. No such agreement is necessary. "The general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action after a full hearing." 7 Moore, Federal Practice ¶ 65.04[1] (2d Ed. 1972). *See also,* District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 134 U.S.App.D.C. 34, 412 F.2d 165, 168 (1969). Nor do we dispute defendants' contention that the proper standard to determine the status quo is the last uncontested status which precedes the pending controversy, Warner Bros. Pictures, Inc. v. Gittone, 110 F.2d 292, 293 (3d Cir. 1940); Westinghouse Electric Corp. v. Free Sewing Mach. Co., 256 F. 2d 806, 808 (7th Cir. 1958); District 50, United Mine Workers of America v. International Union, United Mine Workers of America, *supra* 412 F.2d at 168, and that a preliminary injunction should not permit plaintiff "to obtain an undue advantage by acting while the hands of his adversary are tied by the writ." 7 Moore, Federal Practice ¶ 65.-04[1], (2d Ed. 1972). *See also,* Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 414 F.2d 1168 (1969). But, as was stated in Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971), "[s]uch general statements are less useful in deciding concrete cases than is sometimes thought; often they merely rationalize conclusions already reached." *id,* at 1197. These generalizations cannot be mechanically applied. National Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 921 (2d Cir. 1971).

■■ In applying these general principles to the motions before us, we must realize that defendants are in effect asking us to enjoin the plaintiff. The motions made by the defendants are not a mere modification of our injunction against defendants; defendants request a new injunction. And, as was stated in *Sombrotto,* we are not confronted with an unstructured situation. In determining whether to issue an injunction in a case involving issues raised by *Boys Markets,* a court must always be aware that its equity powers are being used to vindicate the arbitration process. Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586, 588 (2d Cir. 1971) cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). The Supreme Court has stated repeatedly that Federal labor policy fosters the settlement of disputes by arbitration, and that there is a strong presumption in favor of the arbitrability of disputes between employers and labor organizations. *Steelworkers Trilogy,* 363 U.S. 564, 574 and 593, 80 S.Ct. 1343, 1347 and 1358, 4 L.Ed.2d 1403, 1409 and 1424 (1960). We must therefore be wary that in preserving the status quo we do not act to undermine the favored policy of arbitration.

As stated previously, we issued a preliminary injunction on the basis of our tentative judgment that plaintiff had sustained its allegations that the dispute causing the September 27 walkout was over the disciplining of two employees who refused to work overtime, and that this dispute was clearly arbitrable under the grievance and arbitration provisions of the collective bargaining agreement between the parties. The latter contention was hardly disputed by the defendants. It was the Union's argument that the cause of the walkout was the employees' dissatisfaction with the inefficacy of the grievance-arbitration process. There was evidence indicating that grievances took an unduly prolonged period until finally decided by an arbitrator. Much of the backlog of arbitration cases appears to be caused by the collective bargaining provision for only a single arbitrator, and the placing of

joint responsibility in representatives of the International Union and the Company to appoint additional arbitrators should circumstances so require. Whether it was the International or the Company that failed to properly exercise the responsibility of appointing additional arbitrators was a matter in dispute. Nevertheless it was our tentative judgment that the cause of the walkout was the disciplining of the two employees, and that the backlog issue was simply an underlying cause of the dispute. We reserved final decision on the matter pending transcription of the notes of testimony and the filing of briefs. This is how the matter stood when the plaintiff disciplined the employees who engaged in the walkout.

Were we to grant defendants' request enjoining plaintiff's recent disciplinary actions we would be doing a grave disservice to the process of arbitration agreed to by the parties in the collective bargaining contract. This is particularly the case in view of our tentative judgment that the dispute between the parties concerned an arbitrable issue. We would be enjoining the arbitration hearings scheduled for November 14, 15 and 16. If plaintiff's action had been taken in an attempt to undermine the arbitration process and did have such an effect, we might be less hesitant to grant the relief defendants request. But this was not the case. The parties have in fact agreed to arbitrate and to arbitrate on an expedited basis. Although we do not condone plaintiff's action taken during the pendency of litigation, we are disinclined to enjoin plaintiff's conduct on the basis that it has disturbed the status quo absent an attempt to undermine the arbitration process.

Finally, in view of the agreement by the parties to arbitrate the issue of the suspension of the employees who walked out on September 27, we order the parties to brief, in addition to the issues before the court at the time we issued the preliminary injunction, the question whether the matter before the court is now moot.