**George DOBSON, et al., Plaintiffs,**

v.

**CHICAGO AND NORTHEAST ILLINOIS DISTRICT, UNITED BROTHERHOOD OF CARPENTERS, et al., Defendants.**

No. 88 C 6292.

United States District Court,
N.D. Illinois, E.D.

June 28, 1989.

---

Leon Despres, Thomas M. Geoghegan, Chicago, Ill., Amy Louise Beckett, New York City, Clare M. Kralovec, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiffs.

Hugh J. McCarthy, Jr., Hugh J. McCarthy & Associates, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs brought suit for injunctive and declaratory relief pursuant to Section 102 of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. We rule herein on plaintiffs' motion to amend their complaint and defendants' motion for summary judgment. For the following reasons, we grant plaintiffs' motion to amend, in part, and deny defendants' summary judgment motion.

1. The proposal would allocate three-fourths of the additional 1% to the district council and the remaining one-fourth to the local union.

2. In relevant part, we held that
   the alleged denial of voting rights was not with respect to a relatively unquantifiable issue, *e.g.,* the election of directors and officers. The contested issue was a dues checkoff, a

## FACTS/PROCEDURAL HISTORY

This dispute arises out of the procedures surrounding a March 5, 1988 vote by members of defendant Chicago and Northeast Illinois District, United Brotherhood of Carpenters ("District Council"). At issue was a "dues checkoff" proposal which in effect *added* an additional fee of 1% of earnings to the amount already deducted from the salaries of employees for basic dues.[1]

Our memorandum and order of February 9, 1989 denied plaintiffs' motion for preliminary injunction. We therein evaluated three legal issues: first, whether the notice provided to the members was reasonable within the meaning of the LMRDA; second, whether voting by retirees denied the plaintiffs' rights to an equal vote; and third, whether the timing of the vote denied those members who chose to work an equal and reasonable opportunity to vote. Pursuant to *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380 (7th Cir.1984), and in light of the minimal degree to which the alleged damages were irreversible,[2] we found an insufficient probability of success on the merits to justify the proposed injunction.

Initially we revisit the merits to evaluate defendants' motion for summary judgment. After concluding that material issues of fact remain in dispute, we review plaintiffs' motion to amend.

## DISCUSSION

### I. *Summary Judgment*

Plaintiffs contend material issues of fact remain respecting both the adequacy of notice and whether voting by retirees denied the plaintiffs' rights to an equal vote. Before reentering the notice dispute, we quickly dispatch plaintiffs' second allegation.

quantifiable fee. In the event that the plaintiffs succeed on the merits, a new election would be held and monetary damages would appropriately compensate these plaintiffs for the assessments incurred after the original vote.

707 F.Supp. 348, 352 (N.D.Ill.1989).

As a matter of law, plaintiffs' rights to an equal vote were not "diluted" by non-paying retirees. Those retirees are explicitly within the LMRDA's definition of "member", *see* 29 U.S.C. § 402(*o* ), and courts have held that permitting retirees who have neither been expelled nor have withdrawn to vote on work dues provisions is proper. *See, e.g., Stolz v. United Brotherhood of Carpenters, Local Union No. 971,* 655 F.Supp. 192 (D.Nev.1987). In fact, once we hold that retirees fall within the definition of "member," the LMRDA effectively requires they be given the opportunity to vote unless reasonable union rules and regulations exclude them. *See* 29 U.S.C. § 411(a)(1) ("Every member …"); *see also id.* at § 411(a)(3)(A) ("majority vote by secret ballot of the members in good standing"); § 411(a)(3)(B) ("majority vote of the members in good standing").

Judge Mikva's decision in *American Postal Workers Local v. American Postal Workers,* 665 F.2d 1096 (D.C.Cir.1981), is not to the contrary. That opinion sets out the scope of *permissible* union exclusion, without any suggestion that LMRDA might *require* exclusion. *Id.* at 1103 ("These sources [case law and the legislative history] indicate that a union *may* limit voting to active members, or to those in good standing, and *may* exclude those who have not belonged to the union for the requisite period of time") (emphasis added); *see also id.* ("In addition, section 101(a)(1) *permits* a union to limit participation in a specific vote to those whose interests are affected") (emphasis added). The system criticized in *American Postal Workers* also did far more than merely "dilute" the votes of certain members. The court therein held that the American Postal Workers Union violated § 101(a)(1) of the LMRDA by *failing to submit* the proposed contract to Local 6885 members for ratification. We fail to see how plaintiffs gain support from distinctions held to be unreasonable, where they operated "to prevent a group of members from voting or even speaking on matters that vitally affect them." *Id.* at 1104, *quoting Alvey v. General Electric Co.,* 622 F.2d 1279, 1287 (7th Cir.1980). Interpreting the LMRDA, and § 101(a)(3) in particular, to permit union discretion, is perfectly consistent with *Burroughs v. Operating Engineers,* 686 F.2d 723, 727 (9th Cir.1982), and renders the dispute as to the number of non-paying retirees who voted on the "dues checkoff" legally irrelevant.

But the adequacy of notice issue is quite another matter. We skip the development of that requirement and proceed instead with the relevant legal standard.[3] In *Gates v. Dalton,* 67 F.R.D. 621 (E.D.N.Y. 1975), the Eastern District of New York articulated the seminal requirement:

> [T]he statute does not require individual written notice, nor is such an express requirement to be readily inferred from the LMRDA's legislative history.
>
> \* \* \* \* \* \*
>
> More to the point, the LMRDA was designed "to insure union democracy." With that in mind, it seems quite clear that a notice required under § 411(a)(3) is not "reasonable" unless it descends to particulars, and the ordinary union member, attentive to the interests he has at stake in such a situation, is, in some manner, thereby made aware of the specific issue to be voted upon a reasonable time in advance of the meeting.

*Id.* at 627–28 (footnotes omitted). Given the small degree to which we considered the damages at bar to be irreversible,[4] we denied preliminary relief as plaintiff had insufficiently demonstrated probable success on the reasonableness issue.

The allocation of burdens here is reversed. The sliding scale of *Roland Machinery, supra,* left the plaintiff with a difficult row to hoe at the preliminary injunction stage. "The required showing of probability of success on the merits varies with the quality and quantum of harm that [the moving party] will suffer from the

---

**3.** The "adequacy" requirement stems from either or both § 101(a)(1), "Equal Rights," or § 101(a)(3), "Dues, initiation fees, and assessments." *See Dobson v. Chicago & Northeast*

*Illinois District, United Brotherhood of Carpenters,* 707 F.Supp. 348, 349 (N.D.Ill.1989).

**4.** *See supra,* note 2.

denial of an injunction." *District 50, United Mine Workers of America v. International Union, United Mine Workers of America,* 412 F.2d 165, 168 (D.C.Cir.1969), *quoted in Roland Machinery,* 749 F.2d at 387. Once we ruled the alleged harm could fairly be addressed with mere damages, the threshold demonstration of sufficient likelihood of success on the merits became quite difficult to surmount.

Here, however, the procedural posture differs so greatly that our conclusion as to the notice issue might be seen superficially to have changed. Defendants themselves submit the appropriate standard:

> A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 [994], 8 L.Ed.2d 176 (1962); *Illinois v. Bowen,* 808 F.2d 571, 574 (7th Cir.1986).

*Beard v. Whitley County,* 840 F.2d 405, 409–10 (7th Cir.1988). Per *Gates,* the material fact in dispute is whether the notice at issue was reasonable, and we view the record and all inferences drawn therefrom in plaintiffs' favor.

Defendants focus on the other aspects of the *Beard* holding. After setting out the above criteria drawn directly from the federal rules, the Seventh Circuit adds the following provisos:

> However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations that there is a *genuine* issue of material fact which requires trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553,

91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party must do more than simpy "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party there is no 'genuine issue for trial.' " *Id.* at 587, 106 S.Ct. at 1356 (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). "The court should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues where there are none...." *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987) (*quoting Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972)).

*Beard,* 840 F.2d at 410. These criteria render summary judgment no more appropriate. Looking squarely at the record, we need not strain to find considerably more than metaphysical doubt as to whether the notice given was reasonable. And since that determination is a fact issue, *see Gates, supra,* summary judgment would be appropriate only were defendants to prove that *no* reasonable trier of fact could find the notice of issue unreasonable.

Though the facts suggest to *us* that the notice was adequate, reasonable people might disagree. Put succinctly, the dispute arises over the use of the phrase "dues checkoff" to describe the new assessments instead of, for example, "dues increase." [5] No reasonable person would fail to grasp the import of the latter. But the former sounds mechanical, less related to money, and almost akin to "revenue enhancement" or "user fee." The question remains whether "dues checkoff," viewed in the context of the other information furnished

---

5. A quick review of plaintiffs' statement in opposition to defendants' 12(e) statement highlights the centrality of this issue. Plaintiffs' answers to defendants' ¶¶ 2, 3, 4, 6 and 13 predominantly challenge the characterization and instead define the actual issue as a "100% increase in dues."

to the members, would look like an increase to each and every reasonable trier of fact. After reviewing the relevant affidavits, we think not.

While discussing defendants' contentions, we briefly revisit the facts. One notice described the vote as follows:

> [W]hether or not to amend the By–Laws of the District Council to provide for a 1% District Council working dues with ¾ of the 1% to be retained by the Council and ¼ of the 1% to be distributed to the affiliated Local Unions.

(Pl. mem. in opp., exh. 4.) Defendants contend they cannot fathom "a more accurate way to state the issue in question." Frankly, we can, quite easily. This notice makes no mention of the very uncertainty plaintiffs press—whether the 1% District Council allocation *increased* the workers' contribution or merely *reallocated* existing funds. Defendants also argue "the ordinary union member attention to the interests he has at stake" would surely realize that instituting a Council assessment for the first time was an increase. But that merely begs the question: a formula which, for the first time, allocates money to the District Council obviously increases funds to it. The proper question concerns whether that "increase" was to be offset by "decreases" in the existing dues. Based on the notice given, reasonable triers of fact might provide different answers.

There is, however, a single mention of the increase-reallocation issue. The lead article in the February 1987 newsletter was captioned "Dues Checkoff Needed to Save Union Jobs, Benefits, Conditions," and contained over twenty small paragraphs pitching the checkoff. Defendants suggest that the fourth from the last paragraph, centered in the article's last column, provides ample clarification. In its entirety, that paragraph reads:

> Local unions would continue to receive basic dues.

(Pls' mem. in opp., exh. 1.) We leave to the trier of fact whether the ordinary union member would become aware of the issue at stake from this small notation and the other information furnished to him.

Picking up on the contents of our earlier order, defendants now contend that references to the central role of ample funds in past union gains implied that the "dues checkoff" was a request for additional revenue. This represents their contention that no reasonable trier of fact could find for the plaintiffs. After detailing the three pieces of information mailed by the District Council to the membership, defendants argue that

> [i]f nothing else was evident from these three general mailings it should at least have been evident that something was happening which involved dues. It would not take any great leap of genius to conclude that there was something going on which could increase the amount of dues they were going to be asked to pay. Surely, it must have been apparent to all of the members that what was proposed was an increase in what they were being called upon to pay. Otherwise how would a "lack of funds" be avoided.

(Defs' reply mem. at 6). We still think that argument has considerable merit but, again, our view may well differ from any number of reasonable triers of fact. *Gates* also makes clear that notification of "something" pertaining to the dues structure is insufficient. "Reasonable" notice requires considerably more—specifically, it must "descend to particulars." 67 F.R.D. at 628. As such, we cannot impose summary judgment.

II. *Leave to Amend*

On March 28, 1989, plaintiffs filed their motion for leave to file an amended complaint in order to add 38 additional plaintiffs, state a claim for damages, and add a jury demand. We do not think that effort has run afoul of Rule 7(b)'s requirement that a motion must "state with particularity the grounds therefor." Even those passingly familiar with the federal rules understand that

> a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). Plaintiffs have followed this course to the letter and, as we explain below, justice requires our consent.[6]

■ The jury demand, however, presents different issues. Defendants contend that possibility has been waived pursuant to Rule 38(d) ("The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury"). Plaintiffs contend the claim for damages constitutes a new issue for which the right to a jury attaches. We enter that thicket only briefly—enough to conclude that plaintiffs' right to a jury presents a close question.

Because plaintiffs' original complaint did not warrant a jury trial it is not surprising that a jury demand was not made therein. But the claim for damages—brought in the law courts, not in equity—is not so limited. The Seventh Amendment preserves the right to a trial by jury "in suits at common law, where the value in controversy shall exceed twenty dollars." The proposed amended complaint introduces new issues and therefore a jury demand is appropriate within the meaning of Rule 38(b). *Contra Guajardo v. Estelle,* 580 F.2d 748, 752–53 (5th Cir.1978) (holding plaintiffs' amended complaints to be mere restatements of their earlier pleadings and therefore not giving rise to a jury demand). That the issue appropriate for jury consideration will also be joined with a claim for equitable relief (am.cplt. at 8), does prejudice the plaintiffs' right to demand a jury. *See generally Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

We agree that the jury demand would not be warranted by the mere introduction of additional plaintiffs. *Cf. LaMarca et al. v. Turner,* 662 F.Supp. 647 (S.D.Fla.1987) *affirming and adopting* Magistrate Nimkoff's report, *reprinted at* 662 F.Supp. 667, 671 ("since evidence pertaining to the inju-

ries suffered by additional plaintiffs ... would be introduced irrespective of the pleading amendment as support for plaintiffs' injunctive relief, no new issues are raised") (citations omitted). But the proposed amended complaint here does considerably more. It claims damages for the first time—an allegation easily distinguished from merely a "new legal theory." *Contra Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614 (9th Cir.1980). As we have held before,

> when a plaintiff amends a complaint to change the nature of the relief sought from equitable to legal, a demand for a trial by jury as part of the amendment is timely. This is true even though the amendment comes months after the original filing.

*Clark v. Imarflex Manufacturing Co., Ltd.,* No. 85 C 8184, slip op. at 6, 1986 WL 12283 (October 24, 1986).

But the jury demand is appropriate only with respect to those new issues—it cannot operate retroactively to excuse a preexisting Rule 38(b) failure. *See, e.g., Salahuddin v. Harris,* 684 F.Supp. 1224, 1228 (S.D. N.Y.1988). That is why *Clark* was a comparatively easier case. The amended complaint therein abandoned the prior request for equitable relief, thereby leaving only "actions at law." Here, however, the amended complaint maintains the prior request for equitable relief, merely naming additional plaintiffs, and adding remedies and a jury demand.

This difficult posture is even further clouded by our confusion as to exactly what the plaintiffs request herein. Do they request a jury solely to adjudicate the damage phase in which each plaintiff would demonstrate how much money had been deducted from that plaintiff's wages for the "dues checkoff"? Do they request merely an advisory jury pursuant to Rule 39(c) (pl. reply brief at 2)? Do they urge us to exercise our discretion to grant a jury

---

**6.** That plaintiffs' motion could also have been brought under Rule 21 (Misjoinder and Non-Joinder of Parties), Rule 38 (Jury Trial of Right), or Rule 39(b) (Trial by Jury or by the Court), makes us no less willing to grant them

leave to file. If anything, these additional grounds make clear that defendants have suffered no prejudice by plaintiffs' allegedly insufficient description of the procedural posture.

**1102**

trial in the interests of justice, *see Rodriguez v. Schweiger,* 534 F.Supp. 229 (N.D. Ill.1982), or have they withdrawn their jury demand in its entirety (pl. reply brief at 1)?

We choose to refer this issue back to the plaintiffs for further clarification. It is not that we are uncomfortable dealing with these issues; rather, we cannot ascertain what the plaintiffs desire. That being the case, we leave the jury demand issue for another day.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied and plaintiffs' request for leave to file their amended complaint is granted in part.