**AMERICAN CAN COMPANY, Plaintiff,**
v.
**LOCAL UNION 7420, UNITED STEEL-WORKERS OF AMERICA, et al.,**
**Defendants.**
**Civ. A. No. 72–1919.**

United States District Court,
E. D. Pennsylvania.
June 29, 1973.

---

Mark S. Dichter, Philadelphia, Pa., for plaintiff.

Leonard M. Sagot, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

The facts in this case are set forth in our Memorandum and Order of October 25, 1972, American Can Co. v. Local Union 7420, United Steelworkers of America, 350 F.Supp. 810 (E.D.Pa.1972). Briefly stated, the case involves a suit to enjoin a work stoppage conducted by the defendant on September 27, 1972 over an issue alleged to be subject to arbitration pursuant to the collective bargaining agreement between the parties. We had issued a Temporary Restraining Order and a Preliminary Injunction against the work stoppage based on our tentative judgment, after a hearing on a permanent injunction, that the issue over which the work stoppage occurred was a matter subject to arbitration. Subsequent to issuance of the preliminary injunction, the defendant Union moved to modify the injunction in order to prevent the plaintiff Company from suspending for limited durations the persons who engaged in the work stoppage. The Memorandum and Order of October 25, 1972 set forth our reasons for denying defendants' motion to modify the preliminary injunction. At that time we also ordered the parties to submit memoranda of law on the question whether the parties' agreement to arbitrate on an expedited basis the Company's suspension of the employees involved in the September 27th work stoppage rendered the issue before us moot.

We thus have before us at this time the following issues to resolve: (1) whether the case before us is moot in view of the agreement to arbitrate on an expedited basis the suspensions of the employees who engaged in the September 27th work stoppage[1], and (2) if the case is not moot, whether an injunction should issue ordering the defendant to arbitrate the issue over which the September 27th work stoppage took place and restraining permanently any work stoppage or strike over that issue. The parties have agreed that the hearing held on the preliminary injunction would also constitute a final hearing on the permanent injunction.

The preliminary injunction was issued based on our judgment that the dispute causing the September 27th work stoppage was over the disciplining of two employees who refused to work overtime, and that this dispute was clearly arbitrable under the grievance and arbitration provisions of the collective bargaining agreement. While conceding that disciplining employees for refusing to work overtime is an issue subject to arbitration, the Union contended that the cause of the dispute, however, was the inordinate delays experienced in obtaining final resolution of issues submitted to arbitration. There was evidence that in some cases grievances submitted to arbitration would not be finally deter-

---

1. On January 5, 1973, the arbitrator issued an Opinion and Award in which he sustained the Company's suspension for five days of forty-two of the employees involved in the September 27th work stoppage and a written warning given to one other employee. Arbitration of additional five-day suspensions given to employees who had engaged in a prior work stoppage has yet to be decided.

mined until four years after submission. This backlog of arbitration cases was caused primarily by the collective bargaining provision for a single arbitrator for the plaintiff's more than forty plants across the country. The single arbitrator also hears cases from other companies leaving him with only limited time to devote to plaintiff's plants. It is our conclusion, however, that the issue before us is not moot and that the cause of the September 27th work stoppage was the disciplining of the two employees who refused to work overtime.

■■ Although the parties agreed to arbitrate the suspension of the employees involved in the work stoppage and more than half of these grievances have been finally arbitrated, the issue before the Court is not moot since the issues before the arbitrator and the court differ. The arbitration proceeding decides whether there was just cause for the Company's action in suspending the employees for engaging in the work stoppage. The issue before the court, however, is whether the cause for the work stoppage was over a matter subject to arbitration. Thus, the decision by the arbitrator does not determine the issue before us. In addition, if there is a likelihood of reoccurrence of the dispute between the parties, the matter is not moot. Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607 (3 Cir., filed April 3, 1973); Avco Corp. v. Local 787, Autoworkers, 459 F.2d 968, 974 (3 Cir. 1972).

■ Finally, after carefully reviewing the Notes of Testimony of the hearing on the permanent injunction and the memoranda of law submitted by counsel for the parties, we are satisfied that the cause of the work stoppage was the disciplining of the two employees who refused to work overtime.

## ORDER

Now, this 29th day of June, 1973, upon complaint and affidavits filed by counsel for plaintiff, following a full hearing on plaintiff's motion for a permanent injunction and upon findings by the Court that:

1. The plaintiff and defendant Union are parties to a collective bargaining agreement.

2. The collective bargaining agreement between plaintiff and defendant Union prohibits strikes and work stoppages during the life of the agreement.

3. Defendants have engaged in a strike or work stoppage in violation of the no-strike—no-lockout provisions of the collective bargaining agreement.

4. The collective bargaining agreement between plaintiff and defendant Union provides a grievance procedure which binds both parties to arbitration.

5. The strike or work stoppage of defendants was based on the discipline of various employees who failed to agree to work overtime on Saturday, September 23, 1972. Defendant Union's grievance concerning the discipline of the employees is subject to the grievance and arbitration provisions of the collective bargaining agreement.

6. Plaintiff is ready and willing to proceed with arbitration over the issue of disciplining employees for refusing to work overtime in accordance with the grievance and arbitration provisions of the collective bargaining agreement.

7. Substantial immediate and irreparable injury, loss and damage will result to plaintiff by reason of the actions of defendants including loss of present and future business, loss of plaintiff's good will and inability to fulfill its contractual commitments, plaintiff being deprived of the use of its plant and equipment, plaintiff's inability to maintain its plant and equipment resulting in the eventual damage of materials and equipment and plaintiff's denial of free access to its facilities.

# LET THE BELLS RING!

## A HANDBOOK FOR CHANGE RINGERS

### by

### ERIC SHARPE

**Second Edition**

PUBLISHED BY
THE CENTRAL COUNCIL OF CHURCH BELL RINGERS