The CELOTEX CORPORATION,
Plaintiff,

v.

OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
AFL–CIO, Defendants.

Civ. A. No. 74–155.

United States District Court,
M. D. Pennsylvania.

March 19, 1974.

Richard M. Goldberg, Allan M. Kluger, Wilkes-Barre, Pa., David C. Toomey, Philadelphia, Pa., for plaintiff.

David E. Koff, Wilkes-Barre, Pa., for defendants.

## OPINION

MUIR, District Judge.

This complaint was filed on February 19, 1974 by the Celotex Corporation (hereinafter referred to as "Celotex") against the Oil, Chemical and Atomic Workers International Union, Local 8–672 of that Union, and the officials and members of Local 8–672. The action, arising under § 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a), seeks injunctive relief against a strike which began on February 15, 1974 and which was allegedly in violation of the Collective Bargaining Agreement between the parties. On February 19, 1974, the Court issued a temporary restraining order, ordering the men back to work. A hearing on Plaintiff's motion for a preliminary injunction was originally scheduled for March 1, 1974, but upon agreement by all parties, the case was placed upon the March, 1974 trial list to be heard when the case was reached in the ordinary course on that list. The consolidated hearing on both preliminary and final injunction was held on March 12, 1974. The following are the findings and conclusions of the Court.

Celotex conducts business within the Middle District of Pennsylvania at a manufacturing facility known as the

"Pittston Plant" located at Route 92 in Harding, Luzerne County, Pennsylvania. At the Pittston Plant Celotex manufactures mineral ceiling tile and employs approximately 125 people. The hourly pay production and maintenance employees at the Pittston Plant are represented by Oil, Chemical and Atomic Workers Union, AFL–CIO, Local 8–672 (hereinafter referred to as "the Local"). The Local is affiliated with Oil, Chemical and Atomic Workers, International Union, AFL–CIO (hereinafter referred to as "International"). Effective September 22, 1972, Celotex and the International, on behalf of the Local, entered into a Collective Bargaining Agreement covering wages and other terms and conditions of employment respecting members of the Local who are employed by Plaintiff. The Collective Bargaining Agreement expires at midnight May 25, 1974. Article IX of the Collective Bargaining Agreement contains grievance and binding arbitration provisions with a special procedure for discharge cases contained in ¶ 4 thereof. Article X of the Collective Bargaining Agreement provides in pertinent part as follows:

"1. It is agreed on the part of the UNION that there shall be no strikes, slow-downs, sit-downs, walkouts, or other interference with work during the term of this AGREEMENT, and on the part of the EMPLOYER it is agreed that there shall be no lockouts during the terms of this AGREEMENT. Both parties agree to make every reasonable effort to adjust any grievance which may arise in accordance with the remedy provided in the grievance procedure . . . ."

"2. In the event of an unauthorized strike, sitdown, slowdown or work stoppage, the UNION will promptly disclaim responsibility by having an official or committee member so inform the EMPLOYER, and the UNION will also use its best efforts to get the men back to work. If the UNION immediately takes the above action there shall be no financial liability on the part of the OIL, CHEMI-CAL and ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, Local 867–2, or any of its officers or agents. The sole recourse and exclusive remedy of the EMPLOYER in the event of such unauthorized strike or work stoppage is to impose disciplinary action as heretofore mentioned."

On February 14, 1974, Richard Enslen, Celotex Plant Manager at the Pittston Plant, discharged Mr. George Killian, a Celotex employee and President of the Local, because of an alleged extensive record of tardiness and absenteeism and because the company allegedly discovered that he had lied on his employment application. On February 15, 1974, virtually all of the members of the Local who are employed by Celotex refused to report to work for the 7:00 A.M. shift. Picket lines were formed outside the Plant entrance and incoming trucks were halted. On the morning of February 15, Mr. Enslen met with representatives of the Local and told them to get the men back to work since this was an illegal work stoppage. The Local officials met with the men on the picket lines and were told that the men would not return to work unless Mr. Killian were reinstated. The workers' demand was transmitted to Mr. Enslen, but he refused to reinstate Killian.

William Clemens, the International representative in Region 8, was at a meeting in Birmingham, Alabama when the strike began. Mr. Ragawski, regional director of the International, directed Frank Podsiadlik to fill in for Mr. Clemens and to attempt to convince the striking workers to return to work. Mr. Podsiadlik left for the Pittston Plant where he met with the workers. He told them that the strike was illegal because of the no-strike clause in the Collective Bargaining Agreement. He was told by the men that they would go back to work if Killian were reinstated. Mr. Podsiadlik met with Mr. Enslen who again refused to consider Killian's reinstatement. Mr. Podsiadlik attempted to reason with the striking workers, but to no avail. Mr. Clemens returned from

Alabama late in the evening of February 15 and on the morning of February 16, 1974, he was informed of the situation by Mr. Podsiadlik. Mr. Clemens called a meeting of the membership of the Local for the afternoon of February 17, 1974. At the meeting attended by about 65 of the Pittston Plant employees, Mr. Clemens and officials of the Local again expressed their opinion that the strike was illegal and that the men should return to work. It was finally decided that the men would drop their demand that Killian be rehired and instead requested that arbitration on the Killian discharge be expedited. However, the men feared "reprisals," or disciplinary action, by Celotex against some of the striking workers. As another condition to their returning to work, the men requested Mr. Clemens to obtain from the Plant Manager a written agreement that no reprisals would be taken against them. A meeting was held on February 18 between Clemens and the management of the Pittston Plant. Celotex agreed to an expedited arbitration procedure on the Killian matter. Enslen would not agree to give up the right to discipline some of the striking workers, but he did state that it was not his intention to do so at that time. Clemens returned to the men and told them the results of the meeting. When it was learned that Enslen had not given up the right to bring disciplinary action against them, the men decided against going back to work.

On February 19, 1974, an attorney for Celotex notified Mr. Clemens that the company was filing an action in federal court for injunctive relief against the strike. Mr. Clemens thereupon called a meeting of the workers for 6:00 P.M. that evening. Later in the day Mr. Clemens was informed that a hearing for a temporary restraining order would be held before this Court at approximately 5:00 P.M. That hearing was held in Williamsport at 5:00 P.M. and at 5:17 P.M. the Court granted Celotex's motion for a temporary restraining order, ordering the men back to work. At the 6:00 P.M. meeting, the workers voted to

return to work and in fact did return to work at 12:01 A.M. on February 20, 1974. The vote to return to work was taken and the men returned to work before they learned of the Court's granting of the temporary restraining order.

█ Throughout this work stoppage, the Local union officials reported for and did work at the plant. The Court is satisfied that both the Local and the International complied with Article X, ¶ 2 of the Collective Bargaining Agreement by using their best efforts to get the men back to work. The Killian discharge, which was at the core of the work stoppage, is presently pending arbitration. Following the return to work, several of the employees were discharged by Celotex. A grievance has been filed as to this matter and arbitration will be conducted soon. Since the return to work at 12:01 A.M. on February 20, 1974, no further work stoppages, or threats of work stoppages, have occurred. The Court is of the view that there is little likelihood that another work stoppage arising from these disputes will occur.

The ceiling tile made by Celotex at the Pittston Plant is sold to the construction industry and, because of a backlog in orders, is delivered directly to the construction site. This industry is a competitive one, and in the event Celotex cannot fill its order, a permanent loss of Plaintiff's customers may result. During the February 15–19 work stoppage, Celotex was required to shut down its plant and was unable to manufacture or deliver ceiling tile. An extended work stoppage would severely harm the Plaintiff.

This case is controlled generally by Boys Market, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) in which the Supreme Court held that federal courts have jurisdiction to enjoin a strike where the collective bargaining agreement contains a mandatory arbitration procedure and a no-strike clause, and where the cause of the strike in-

volves an arbitrable dispute. All parties agree that the discharge of Mr. Killian is an arbitrable grievance under the agreement. In fact, the Defendants concede that the work stoppage was illegal and, under normal circumstances, would be the proper subject of injunctive relief.

■■ However, the Defendants contend that the issues in this case are moot, that there is no longer any need for injunctive relief since the men are back to work and the underlying disputes are proceeding towards arbitration. This contention has merit. *Boys Market* established a policy in favor of enforcing the settlement of labor disputes through compulsory arbitration. But as noted by the Supreme Court:

" . . . the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."

398 U.S. at 254, 90 S.Ct. at 1594, citing Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1328, 8 L.Ed.2d 440 (dissenting opinion). Where an action brought to enjoin an illegal strike involves past misconduct, the case is not moot if the possibility of its recurrence survives. Avco Corp. v. Local Union # 787, Auto Workers, 459 F.2d 968 (3d Cir. 1972); American Can Co. v. Local Union 7420, United Steelworkers, 361 F.Supp. 377 (E.D.Pa.1973). In the case at bar, Celotex points to a past history of illegal work stoppages at the Pittston Plant in support of its contention that there is a likelihood that the workers will again strike unless prevented from doing so by the requested permanent injunction. The "history" consists of 4 walkouts between 1965 and 1970, each lasting between 4 hours and 24 hours. In my view, these past walkouts do not demonstrate a pattern of activity which is likely to be followed. The Court has found that there is little likelihood that the workers will again strike over the dispute concerning Mr. Killian's discharge. This finding is based upon the facts that the men returned to work before notification of the Court's issuance of a temporary restraining order, that the disputes are in the process of being arbitrated pursuant to the collective bargaining agreement, and that the International and Local have at all times acknowledged the illegality of the work stoppage and have encouraged resolution of the dispute within the framework of the agreement. While it is recognized that cessation of illegal conduct does not render a case moot, the Court is of the opinion that under the circumstances presented by this case, a permanent injunction against future strikes is unnecessary. See United States v. W. T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L. Ed. 1303 (1953).

Also before the Court is Defendants' motion to vacate the temporary restraining order on four grounds, one of which is that there is no longer any necessity for injunctive relief. The Court will grant the motion on this ground for the reasons stated in this Opinion. Resolution of the other issues raised in Defendants' motion is thus unnecessary.

This Opinion shall constitute the Court's findings of fact and conclusions of law. An appropriate order will be entered.