## State Parks

KANE, Attorney General, DeLUCA, JR., Deputy Attorney General, and YAKOWICZ, Solicitor General September 29, 1977 — You have requested our opinion regarding the right of the International Society for Krishna Consciousness to distribute literature, solicit contributions and, in general propagate their religious beliefs in the State parks. You have also asked whether the International Society for Kirshna Consciousness (hereinafter referred to as the Hare Krishna Movement) may be prohibited from entering specific portions of parks such as camping or boating areas. It is our opinion, and you are hereby advised, that members of the Hare Krishna Movement do have a First Amendment right to distribute literature and solicit donations in the State parks subject to reasonable restrictions concerning time, place and manner. However, certain areas of State parks such as campgrounds, cabins, swimming areas and boating areas are inappropriate for the propagation of religious beliefs. Because of overriding governmental interests, members of the Hare Krishna Movement have no right to exercise their activities in these areas.

Previously we considered a similar question. In

Official Opinion No. 37 of 1976, D. & C. 3d 168, we were asked whether members of the Hare Krishna Movement had a First Amendment right to enter the State Farm Show arena during the annual Farm Show. At that time, we determined that, subject to certain limitations and restrictions, the Hare Krishna Movement does have the right to enter the Farm Show Arena and proselytize. Reference was made to Official Opinion No. 37 of 1976 in the preparation of this opinion.

The State parks are generally under the control of the Department of Environmental Resources. Pursuant to section 1906-A of the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §510-6, the Department is charged with the authority "[t]o supervise, maintain, improve, regulate, police and preserve, all parks belonging to the Commonwealth."

The Department of Environmental Resources includes the Bureau of State Parks. The stated policy and objective of the Bureau of State Parks is "to promote and provide healthful outdoor recreation and environmental education to the citizens and guests of the Commonwealth.": 25 Pa. Code §11.202. In order to carry out its objectives, the Bureau of State Parks has enumerated forms of recreation available to those persons utilizing State parks. The approved forms of recreation include:

". . . family camping, swimming, environmental education, fishing, hunting, pleasure driving, hiking, backpack camping, snowmobiling, ski touring, trail bike riding, nature study, horseback riding, trapping, boating and picnicking": 25 Pa. Code §11.203(a).

Generally, the public is invited to enter the parks free of charge and engage in any one of the aforementioned activities. However, certain areas of specialized use such as camping and cabin areas along with boating areas have been specifically set aside. These are areas where only the respectively enumerated activities are permitted. Furthermore, these areas are generally not held open for all members of the public to use free of charge. Rather, the Bureau of State Parks, through various regulations, has provided for reservation and rental fees for use of these specialized areas. The Hare Krishna Movement contends that it has a First Amendment right to enter these areas, as well as areas of general use, in order to proselytize.

It is beyond dispute that the rights and freedoms guaranteed by the First Amendment are fundamental and are applied to the States by the Fourteenth Amendment. It is also beyond dispute that there is sufficient "state action" present for the Fourteenth Amendment to bind the Commonwealth of Pennsylvania to the requirements of the First Amendment. The Commonwealth of Pennsylvania owns each of the State parks. The parks are supervised and regulated by the Department of Environmental Resources whose personnel carry out the supervision and regulation. Therefore, the matter is narrowed to two issues. First, do members of the Hare Krishna Movement have a First Amendment right to enter State parks for the purpose of propagating their religious beliefs? Secondly, does the Commonwealth of Pennsylvania have the right to regulate these First Amendment activities and, if so, what is the permissible extent of such regulations?

The courts have held that in order for First Amendment rights to attach to State-owned property, it must be held open to the public. Official Opinion No. 37 of 1976 enumerated several cases which determined whether certain government properties were public places.[1] Other decisions have specifically dealt with parks. The courts are in unanimous agreement that parks are and have been open to the public.

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions . . .": Hague v. C.I.O., 307 U.S. 496, 515-16 (1939).

"The use of parks for public assembly and airing of opinions is historic in our democratic society, and one of its cardinal values. Public assembly for First Amendment purposes is as surely a 'park use' as any tourist or recreational activity.": A Quaker Action Group v. Morton, 516 F.2d 717, 724 (D.C. Cir., 1975).

See also Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969).

It is evident that Pennsylvania State Parks are public places which generally are appropriate areas for First Amendment activities. Therefore, members of the Hare Krishna Movement do have a

---

1. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969); Southeastern Promotions, Ltd. v. City of West Palm Beach, 457 F.2d 1016 (5th Cir., 1972); Wolin v. Port of New York Authority, 392 F.2d 83 (2nd Cir., 1968); and International Society for Kirshna Consciousness v. Dallas-Fort Worth Regional Airport Bd., 391 F.Supp. 606 (N.D. Texas, 1975).

right to enter the parks, solicit contributions[2] and proselytize. The Department of Environmental Resources may not absolutely forbid the use of State parks for these activities.

The question now arises as to whether the Department of Environmental Resources may regulate members of the Hare Krishna Movement in the exercise of their First Amendment rights and the permissible nature and extent of any such regulation.

In Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969), the court considered the problem of regulating First Amendment activities. Quoting from Hague v. C.I.O., 307 U.S. 496 (1939), the court held that the ". . . use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.": 394 U.S., at 152.

The government may also act to preserve the nature and use of its property.

---

2. The fact that members of the Hare Krishna Movement solicit contributions incidental to their religious activities does not remove their activities from the protection afforded by the First Amendment: Murdock v. Pennsylvania (City of Jeannette), 319 U.S. 705 (1943); International Society for Krishna Consciousness v. City of New Orleans, 347 F.Supp. 945 (E.D. La., 1972).

"The state has the power to protect and preserve its property for the use to which it was dedicated, and there is no constitutional right to distribute pamphlets or leaflets whenever or wherever one pleases.": Benson v. Rich, 448 F.2d 1371, 1373 (10th Cir., 1971).

See also Greer v. Spock, 424 U.S. 828, 833 (1976), and Adderley v. Florida, 385 U.S. 39, 47 (1966).

More to the point, several cases have considered the right to engage in First Amendment activities in public parks. In each decision the courts have stated the regulations as to "time, place and manner" are permissible if they allow for no discrimination and very limited discretion on the part of park officials: Kunz v. New York, 340 U.S. 290 (1951); A Quaker Action Group v. Morton, 516 F.2d 717 (D.C. Cir., 1975); Women Strike for Peace v. Morton, 472 F.2d 1273 (D.C. Cir., 1972); Jeannette Rankin Brigade v. Chief of Capitol Police, 342 F.Supp. 575 (D.C.C., 1972)' and Washington Free Community, Inc. v. Wilson, 334 F.Supp. 77 (D.D.C., 1971).

In determining the permissible nature and extent of any regulation limiting alleged First Amendment activities, the courts have adopted a test enumerated in United States v. O'Brien, 391 U.S. 367 (1968).

"[R]estrictions on expression are valid if (1) the '[regulation] furthers an important or substantial governmental interest,' (2) the 'governmental interest is unrelated to the suppression of free expression,' and (3) the incidental restriction on alleged First Amendment rights is no greater than is essential to the furtherance of that interest.": A

Quaker Action Group v. Morton, 516 F.2d 717, 725-726 (D.C. Cir., 1975).

In order to restrict the religious activities of the Hare Krishna Movement within State parks, the Department of Environmental Resources must use the guidelines set forth in O'Brien. The department should keep in mind the fact that O'Brien is basically a balancing test. Therefore, the governmental interest must outweigh the chilling effect upon First Amendment freedoms.

The nature and form of any regulations must be left to the Department of Environmental Resources. However, certain areas of State parks are designed and intended only for certain specialized activities. Because of the nature of these specialized activities, there exists an important and substantial governmental interest in protecting the health and safety of persons using these specialized areas of the State parks. These areas are, therefore, inappropriate for the dissemination of religious philosophies.

Boating areas were designed for and, indeed, may only be fully utilized for boating. There are also overriding considerations of safety. The launching, docking and handling of watercraft are delicate activities which require the utmost concentration and care. The required care would not be possible if boating areas become a forum for the expression of religious beliefs.

It is evident that similar safety considerations also dictate that areas especially reserved for swimming may be regulated as to use. In order to

maintain an acceptable safety standard in swimming areas, the department must ensure that it retains complete control and discipline over the activities within the area.

There also exists an important and substantial governmental interest in protecting the health and safety of persons using campgrounds and cabin areas. These areas have been planned and designed with only one activity in mind. The use of these areas for other purposes is inappropriate and inconsistent with safety considerations. Several decisions, including Adderley v. Florida, 385 U.S. 39 (1966), have held that the State may preserve its property for the use to which it is dedicated.

Furthermore, several cases involving the use of parks for First Amendment activities have stated that the government may reserve certain park areas for a specific park use. In A Quaker Action Group v. Morton, 516 F.2d 717, 724-25 (D.C. Cir., 1972), the court stated:

"It may be that certain parks can reasonably be reserved for specific park uses; First Amendment activity might be inappropriate for a wilderness area such as Yellowstone Park."

The court in Women Strike for Peace v. Hickel, 420 F.2d 597 (D.D.C., 1969), while ruling that the United States Park Service could not completely exclude antiwar demonstrators from a park, did indicate that:

"It may well be that a sound park policy could accommodate the use of some park areas for public expression, and the reservation of certain park areas for other purposes.": 420 F.2d, at 601.

Therefore, it seems clear that the Department of Environmental Resources may prohibit members of the Hare Krishna Movement from proselytizing in those areas of State parks specifically dedicated for a certain specialized activity such as camping.

Other considerations are also present. Campgrounds and cabin areas are sections of the park that become especially crowded and congested. They are specifically designed to accommodate a large number of people only for their respective purposes. Therefore, the need to maintain order becomes quite important.

More importantly, public safety is also an issue. These areas are also used extensively for cooking. With the possibility of a large number of open fires in a confined area, which often is congested, it becomes necessary to limit other activities within the area.

In conclusion, it is our opinion, and you are advised, the members of the Hare Krishna Movement do have a First Amendment right to proselytize and solicit donations within State parks. However, the Department of Environmental Resources may, in accordance with the requirements of United States v. O'Brien, 391 U.S. 367 (1968), regulate the areas where members of the Hare Krishna Movement are permitted to proselytize. Furthermore, the department may prohibit the exercise of these activities in campgrounds, cabin, boating and swimming areas. Because of the specialized design and use of these areas, which give rise to an important and substantial governmental interest in protecting the health and safety of persons using the specialized areas, they are not an appropriate forum for the dissemination of religious philosophies.