**UNITED STATES of America**

v.

**Mary E. BOESEWETTER.**

**UNITED STATES of America**

v.

**Deborah J. LYNCH.**

**UNITED STATES of America**

v.

**Anne E. SILVER.**

**Crim. Nos. 78–318 to 78–320.**

United States District Court, District of Columbia.

Nov. 20, 1978.

William J. Hardy, Jr., Asst. U. S. Atty., Washington, D. C., for the United States.

George E. Cranwell, Falls Church, Va., for defendants.

## MEMORANDUM

GASCH, District Judge.

This case is before the Court on defendants' motion to dismiss each of the above criminal actions, which have been consolidated for the purpose of a single hearing. Defendants have been charged with violations of 36 C.F.R. § 50.24(c)(2)(v), which states:

(c) Sales

.    .    .    .    .

(2) The sale or distribution of newspapers, leaflets, and pamphlets . . . is permitted in all park areas, open to the general public . . . except the following areas where such sale or distribution is prohibited:

.    .    .    .    .    .

(v) The interior of all park buildings including, but not limited to, those portions of the Kennedy Center . . . administered by the National Park Service.

Defendants have moved to dismiss the criminal charges on the ground that the regulation unlawfully prohibits their exercise of first amendment rights as religious missionaries in the Kennedy Center.

Defendants are members of the International Society for Krishna Consciousness (ISKCON), a religious organization that imposes upon its followers the obligation to disseminate its principles and to seek financial contributions to support its religious activities. To fulfill the latter obligation, ISKCON members, known as devotees, are required to perform a ritual known as Sankirtan, which includes soliciting and accepting donations and contributions and distributing religious literature and information in public places. On various occasions in May and June, 1978, defendants Boesewetter, Lynch and Silver, while engaged in this practice within the interior of the Kennedy Center, were arrested and charged with soliciting in violation of 36 C.F.R. § 50.-24(c)(2)(v) (1977). For purposes of this motion, defendants admit that they were engaged in missionary activities within the halls of the Kennedy Center when they were arrested.

On May 13, 1976, Ms. Boesewetter attempted to distribute religious literature and solicit contributions in the hall of the Kennedy Center and was arrested and charged with soliciting contributions in violation of 36 C.F.R. § 50.24(a) (1977). Following her conviction by a United States Magistrate, Ms. Boesewetter appealed to the United States District Court for the District of Columbia, which found that the regulation then in effect, as applied, uncon-

stitutionally abridged the free exercise of religion guaranteed by the first amendment. *United States v. Boesewetter*, Crim. No. 77–13 (D.D.C. April 14, 1977). Defendants urge that this decision makes clear that ISKCON devotees have a constitutional right to distribute religious literature and solicit contributions in the Kennedy Center. This argument is not convincing, however, for the earlier *Boesewetter* case involved a conviction for soliciting rather than distribution and the district court limited its holding to the narrow factual grounds of the case before it. Slip Op. at 6. Also the instant case involves an amended regulation.

■ It is well-established that the first amendment protects distribution of religious literature and solicitation of funds to support religious activity. *Murdock v. Pennsylvania*, 319 U.S. 105, 111–12, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). The government can impose incidental burdens on the free exercise of such freedoms only if state regulation is dictated by a "compelling state interest." *E. g., Shuttlesworth v. Birmingham*, 394 U.S. 147, 153–55, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Women's Strike for Peace v. Morton*, 153 U.S.App.D.C. 198, 209, 472 F.2d 1273, 1284 (1972) (Wright, J., concurring); *ISKCON v. City of New Orleans*, 347 F.Supp. 945, 947 (E.D.La.1972).

In promulgating the regulation at issue here, the Director of the National Park Service stated that the Kennedy Center is dedicated to the performing arts and has a close association in visitors' minds with the memory of a slain president. Therefore, "National Capital Parks has specifically identified these buildings as areas where an atmosphere of calm and tranquility, consistent with their use for performing arts functions, should be preserved." 41 Fed.Reg. 14525 (Apr. 6, 1976). In support of its argument that this represents a legitimate governmental interest, the United States cites *Washington Free Community, Inc. v. Wilson*, 334 F.Supp. 77 (D.D.C.1971), in which the Court held that the public's interest in maintaining parks "as a refuge from the hustle and bustle of the city and the

commercial world and as places of tranquillity and repose" represents a state interest that can be protected by licensing systems that restrict the exercise of first amendment rights. *Id.* at 82.

Despite this governmental interest, the Court in *Washington Free Community* declared that a regulation absolutely forbidding the sale of newspapers in the national park system was overly broad and unconstitutional. *Id.* As written, the regulation applied to parks such as Dupont Circle and Lafayette Square, which are located in the center of business activity and are the scenes of frequent demonstrations, and also to national shrines, such as the Lincoln and Jefferson Memorials and the Washington Monument, where a reverential atmosphere exists despite the large number of visitors. Finding that the governmental interest in maintaining an atmosphere of calm, tranquility and reverence was overriding and substantial only in the latter areas, the Court held that the regulation had to be rewritten to take into consideration the varying character of the national capital parks and to establish certain standards consonant with first amendment rights. *Id.* at 83.

The same considerations apply to the present case. The anti-distribution ordinance applies to a number of areas including portions of the national memorials mentioned above, Constitution Gardens, the White House Park area, as well as the interior of all park buildings including the Kennedy Center. The interest in preserving a calm and reverential atmosphere may not exist to the same degree in each of these areas. Although section 50.24(c)(2)(v) makes some attempt to distinguish between various park areas, the same problems of overbreadth that troubled the Court in *Washington Free Community* may exist here.

■ It is not necessary, however, to decide defendants' motion on overbreadth grounds. In assessing the reasonableness of a regulation such as this, the Court must weigh heavily the fact that both speech and religious activity are involved. The crucial

question with respect to the free speech claim is "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

 Defendants urge that the distribution of religious literature in the halls of the Kennedy Center is not incompatible with that building's function as a performing arts center. They point out, and the government does not dispute, that beverages and other refreshments are sold by commercial vendors in the halls of the Center prior to and during the intermissions of most performances. More closely analogous to the distribution at issue here is the permitted commercial sale of souvenir programs and other commemorative items under similar circumstances. Having permitted such activities to take place in the semi-public portions of the Kennedy Center, the government cannot attempt to impose an absolute ban on defendants' religious activities by means of section 50.24(c)(v).

This is not to suggest that regulations focused more particularly on the "time, place, and manner" of the distribution of printed material within the Kennedy Center could not promulgated. *See, e. g., Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. New Hampshire,* 312 U.S. 569, 575–76, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *Schneider v. State,* 308 U.S. 147, 165, 60 S.Ct. 146, 84 L.Ed. 155 (1939). For example, if commercial transactions involving refreshments and programs are conducted from fixed locations such as sales booths, distribution of religious literature perhaps may be limited to similar locations. *See ISKCON v. Evans,* 440 F.Supp. 414, 424 (S.D.Ohio 1977). *But see ISKCON v. Griffin,* 437 F.Supp. 666, 673 (W.D.Pa.1977). Stricter time, place, and manner limitations can be imposed where access to a semi-public forum must be reconciled with the rights of other users, such as rights of Kennedy Center patrons to be free of disruptions or intrusions that interfere with their enjoy-

ment of a performance. *See Toward a Gayer Bicentennial Comm. v. Rhode Island Bicentennial Foundation,* 417 F.Supp. 632, 639 n.9 (D.R.I.1976). The regulations governing ISKCON activities at the World Trade Center Complex that were the target of an unsuccessful motion for a preliminary injunction in *ISKCON v. McAvey,* 450 F.Supp. 1265 (S.D.N.Y.1978), suggest one means by which the use of public places may be regulated in the interests of all.

In considering this motion, the Court has limited its review to the narrow question of the constitutionality of 36 C.F.R. § 50.24(c)(2)(v), the regulation upon which these prosecutions were based. For the reasons set forth above, it concludes that the regulation as presently written abridges, insofar as the Kennedy Center is concerned, protected constitutional rights and for that reason, the criminal actions against defendants Boesewetter, Lynch, and Silver must be dismissed.