UNITED STATES of America

v.

Carol Ann FENNELLY.

Crim. No. 89–0292.

United States District Court,
District of Columbia.

Dec. 18, 1989.

R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Arthur Spitzer, Washington, D.C., for defendant.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

By Information the United States has charged that Defendant Fennelly on June 21, 1989, violated National Park Service Regulation 36 C.F.R. § 7.96(j)(2)(v) by distributing leaflets along East Executive Avenue.[1] Pursuant to Rule 12(b)(2), F.R. Crim.P., defendant has moved to dismiss on the ground that the regulation claimed to be violated unconstitutionally limits her First Amendment rights and is therefore void both on its face and as applied. The facts are not in dispute. The matter has been extensively briefed and heard.

The specific regulation at issue, 36 C.F.R. § 7.96(j)(2)(v), absolutely prohibits the distribution of "newspapers, leaflets, and pamphlets" in what the regulations refer to as the "White House Park Area." That area is defined as being

> bounded on the north by H Street, N.W.; on the south by Constitution Avenue, N.W.; on the west by 17th Street, N.W.; and on the east by 15th Street; except for Lafayette Park, the White House sidewalk (the south Pennsylvania Avenue, N.W. sidewalk between East and West Executive Avenues) and the Ellipse.

*Id.*

*Regulatory Background*

It is important to trace the origin and history of the provision at issue. In 1959, the Department of the Interior, having jurisdiction over the management and maintenance of all National Parks, including what was later to be defined as the "White House Park Area," issued a comprehensive set of regulations for National Parks. *See* 24 Fed.Reg. 11014–22 (Dec. 30, 1959). These regulations prohibited, among other matters, the *sale* of any item on Park Service property without an official permit, *see id.* at 11017, § 3.24(c), but did not prohibit the free distribution of pamphlets or leaf-lets. *See* Defendant's Motion, Attachment 2. In fact, the subject of free leaflets and pamphlets was not mentioned. The prohibition of sales and non-prohibition of free distribution remained the law until 1976. *See* 36 C.F.R. § 50.24(c) (1976 ed.).

In 1971, Judge Corcoran held that the prohibition of the sale of newspapers on Park Service property violated the First Amendment. *Washington Free Community, Inc. v. Wilson,* 334 F.Supp. 77 (D.D.C. 1971). Conceding that the government had a legitimate interest in "maintaining the parks as a refuge from the hustle and bustle of the city and the commercial world and as places of tranquility and repose," Judge Corcoran could not justify the regulation "in areas traditionally open to the public for the exercise of First Amendment rights." *Id.* at 82.

In response, the Park Service published proposed regulations "governing the sale or distribution of newspaper [sic], leaflets, and pamphlets in park areas." 41 Fed. Reg. 14525 (April 6, 1976). For the first time there appeared the regulation at issue banning the distribution of leaflets and pamphlets in the "White House Park Area". *See id.* at 14526, § 50.24(c)(2)(vi). When proposed, the purpose of the new regulations was described as being "to preserve the reverential nature of certain of our national memorials[2] and park buildings associated with past Presidents," and to maintain "an atmosphere of calm and tranquility [which] substantially enhances the visitor's park experience in these areas." 41 Fed.Reg. 14525; *see* Defendant's Motion, Attachment 4. After notice and comment, the regulation was promulgated and has remained unchanged. It is now recodified at 36 C.F.R. § 7.96(j)(2)(v). *See* 51 Fed.Reg. 37011 (Oct. 17, 1986).

*The Positions of the Parties*

Defendant's claim is unexceptional and straightforward. East Executive Avenue is a public street, and public streets and sidewalks are traditional public fora that

---

**1.** East Executive Avenue is the north-south street that runs between the White House and the Treasury Department. It is generally open to public pedestrian traffic and was open to such traffic on June 21, 1989.

**2.** In 1984, the Vietnam Veterans Memorial was added to the list of memorials covered by the regulation. Defendant's Exhibit No. 23.

"time out of mind have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." Defendant cites many of the relevant cases, including *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988) (embassy picketing), *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (expressive conduct in the area surrounding the Supreme Court Building), *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. 575, 585 (D.D.C.), *aff'd*, 409 U.S. 972, 93 S.Ct. 311, 34 L.Ed.2d 236 (1972) (expressive activity on the grounds of the U.S. Capitol Building). The streets and sidewalks surrounding the White House are not only a public forum but The White House sidewalk, Lafayette Park and the Ellipse constitute a "unique situs" for activities protected by the First Amendment. *White House Vigil for the ERA v. Clark*, 746 F.2d 1518, 1526 (D.C.Cir.1984); *A Quaker Action Group v. Morton*, 516 F.2d 717, 724-25 (D.C.Cir.1975). It is not seriously disputed that any prohibition on a particular type of expression must be "narrowly drawn to accomplish a compelling governmental interest." *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983). According to defendant, the regulation banning the free distribution of leaflets does not meet this test.

Plaintiff's response likewise is straightforward. In brief, plaintiff asserts that the right of free speech is not absolute but that "expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). According to plaintiff, the regulatory framework meets the constitutional standards for reasonable time, place and manner limitations because 1) the regulation is content-neutral, 2) it serves a significant government interest, 3) it has been narrowly tailored to serve that

"paramount governmental interest," and 4) it leaves open ample alternative channels of communication. *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 654, 101 S.Ct. 2559, 2567, 69 L.Ed.2d 298 (1981). The defendant agrees that the regulation is content-neutral. The parties sharply disagree on whether this regulation serves a significant governmental interest, has been narrowly tailored to serve that interest or leaves open ample other alternatives.

*Discussion*

It is probably true that the regulation at issue is part of a comprehensive regulatory scheme revised in 1970 and designed to govern expressive conduct particularly in the White House Area and that the overriding concern of the regulatory framers was the safety of the President and protection of persons in the White House, all encompassed under the rubric of Presidential or White House security. This is shown by the reliance of the plaintiff on the March 28, 1969, affidavit of James J. Rowley, the then Director of the U.S. Secret Service, and on Rowley's subsequent affidavit of October 15, 1969. In both of these submissions, Rowley pointed out the dangers to Presidential security from demonstrations in front of the White House and recommended that the current limitations to groups on the south sidewalk of Pennsylvania Avenue of 100 persons and 500 persons in Lafayette Park be continued.[3]

It is reasonably clear that the 1970 revision which focused on demonstrations in the "core" area permitted a limited amount of expressive conduct on the south side of Pennsylvania Avenue and in Lafayette Park (as well as the Ellipse). The guiding standard in 1970 was White House security. At that time there was no ban on the free distribution of leaflets, which either was not considered or was apparently thought to be consistent with Presidential security. However, in 1976 when the Park

---

**3.** The so-called "100/500 rule," which led to several years of litigation culminating finally in 1975, when the Court of Appeals largely affirmed this Court's early decision in raising the limits to 750 and 3000 "as a minimum." *A Quaker Action Group v. Morton*, 516 F.2d 717 (D.C.Cir.1975).

Service, in response to Judge Corcoran's decision, announced that it was considering amendments to the regulations, it described those regulations as "governing the sale or distribution of newspapers, leaflets and pamphlets in park areas in order to preserve the reverential nature of certain of our national memorials and park buildings associated with past Presidents." 41 Fed.Reg. 14525. Nothing was said about the underlying purpose of Presidential security which was the overriding purpose of the comprehensive regulations issued in 1970. In summary, the broad 1970 revision, which proceeded under the aegis of considerations of White House security, at the same time permitted the free distribution of pamphlets and leaflets by not mentioning them. In contrast, the 1976 revision was limited as previously indicated and for the first time banned the distribution of newspapers, leaflets and pamphlets in the White House Park Area. The stated purpose was to preserve the reverential nature of certain of our national memorials and park buildings and that "an atmosphere of calm and tranquility substantially enhances the visitor's park experience in these areas and should be maintained." *Id.*

Plaintiff's defense of the regulation on Presidential security grounds has at least two other problems. The White House Park Area by definition also includes areas far removed from the White House, *i.e.,* 17th & H Streets, N.W. and 15th & H Streets, N.W., to mention only two. *See* Defendant's Motion, Attachment 1. However justified a limited restriction on expressive conduct on the south side of Pennsylvania Avenue and Lafayette Park may be for reasons of White House security, a ban on the free distribution of leaflets and pamphlets in those remote areas far removed from the White House itself has no conceivable governmental interest. Secondly, while Defendant Fennelly would violate the regulation by passing out a leaflet, she could convey the same identical message by word of mouth without fear of arrest. *See* Plaintiff's Ex. 1 (the actual leaflet attempted to be distributed which concerns the plight of the homeless). There is no basis for a principled distinction between these types of expression, nor does the government attempt to make one. Plaintiff does not seek to uphold the regulation as an anti-littering ordinance, nor could it do so. If visitors or tourists object to being offered a leaflet on the street, they are free to decline or throw it away unread. *See Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 72, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983).

Finally, the government would sustain this particular regulation as being a small part of a comprehensive regulatory scheme, the overall constitutionality of which defendant has not challenged. Defendant is not charged with violating a regulatory scheme but only with violating a small portion contained in a specific provision. This is the issue we have addressed.

For all of the foregoing reasons, and after balancing the legitimate interests advanced by both parties, we conclude that this regulation, 36 C.F.R. § 7.96(j)(2)(v), is an unconstitutional limitation of defendant's rights under the First Amendment.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of defendant's motion to dismiss the Information with prejudice for failure to state an offense, the government's opposition thereto, and the facts adduced and arguments presented at the hearing thereon;

The Court being of opinion that the administrative regulation that the defendant is alleged to have violated (36 C.F.R. § 7.96(j)(2)(v)) is unconstitutional on its face and as applied in her case, as further explained in a memorandum opinion filed this date;

It is, therefore, this 15th day of December, 1989, hereby

ORDERED that defendant's motion to dismiss is granted and the Information is

dismissed with prejudice for failure to state an offense.